**Clarence Edward HILL, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**Robert BUTTERWORTH, etc., and Harry K. Singletary, etc., Defendants.**

**No. 4:96–cv–288–MMP.**

United States District Court,
N.D. Florida,
Tallahassee Division.

Jan. 16, 1997.

Martin James McClain, Stephen M. Kissinger, Michael J. Minerva, Office of the Capital Collateral Representative, Tallahassee, FL, for Clarence E. Hill.

Carolyn M. Snurkowski, Richard B. Martell, Attorney Generals Office Department of Legal Affairs, Tallahassee, FL, for Robert A. Butterworth and Harry K. Singletary.

## *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

PAUL, Chief Judge.

Plaintiff seeks to permanently enjoin Defendants from invoking or asserting, in any state or federal proceeding, that the State of Florida has complied with the so-called "opt-in" provisions of Chapter 154 of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, Title I, § 101 *et seq.*, 110 Stat. 1214 (1996) (codified as 28 U.S.C. §§ 2261–66) (*hereinafter "the Act"*). In addition, Plaintiff has moved for certification of a class comprised of "all prisoners who have been sentenced to death by the State of Florida and are currently awaiting execution pending the resolution of their state and federal challenges to their state convictions and sentences." *Compl.*, Doc. 1,

at ¶ 17. The relevant facts and issues of this case were previously set out by the Court in *Hill v. Butterworth*, 941 F.Supp. 1129 (N.D.Fla.1996), wherein the Court granted Plaintiff's motion for a preliminary injunction. All discovery has been completed.

On October 10, 1996, the Court held a one day bench trial on the merits and the class certification issue. All parties were represented at the trial. The Court now sets out its findings of fact and conclusions of law in accordance with Rule 52(a), Federal Rules of Civil Procedure, based upon all admissible evidence presented at trial, or otherwise contained in the record.

## DISCUSSION:

### I. Plaintiff's motion for class certification:

Plaintiff filed this suit seeking declaratory and injunctive relief for himself and all other similarly situated death-sentenced prisoners in the State of Florida who are awaiting execution. *See Compl.* at ¶ 17. Notwithstanding this class language, the Court only granted Plaintiff's motion for a preliminary injunction as to the Plaintiff in his individual capacity because the Plaintiff had not moved for class certification pursuant to Local Rule 23.1(B). 941 F.Supp. at 1132. Plaintiff subsequently made such a motion, *see Plaintiff's Brief on Class Certification (hereinafter "Pl.'s Br.")*, Doc. 21, which Defendants oppose, *see Defendants' Brief on Class Certification (hereinafter "Defs.' Br.")*, Doc. 24. In addition, the parties supplemented their briefs in their written closing arguments. *See Pl.'s Closing Argument (hereinafter "Pl.'s Cl.Arg.")*, Doc. 41; *Defs.' Closing Argument (hereinafter "Defs.' Cl.Arg.")*, Doc. 46. The Court now deems it appropriate to address the propriety of certifying this cause as a class action.

District court judges have broad discretion in determining whether to certify a class. *E.g., Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir.1992).[1] However, a class action "may only be certified if the court is satisfied, after a rigorous analysis, that the prerequisites of

Fed.R.Civ.P. 23(a) have been satisfied." *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir.1984) (citing *General Telephone Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2373, 72 L.Ed.2d 740 (1982)). Specifically, this Court must now evaluate whether the proposed class meets the four requirements of Rule 23(a), which include whether

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Furthermore, the Court must determine whether this action may be maintained as one of the classes under Rule 23(b). The party seeking to maintain the class action bears the burden of demonstrating all prerequisites to class certification have been satisfied. *Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1363 (11th Cir.1984).

In examining the class claims, district courts are given broad discretion in determining whether all of the requirements of Rule 23 have been met. *Lewis v. Heckler*, 752 F.2d 555, 557 (11th Cir.1985). If the action fails to meet one or more of the four prerequisites or does not fall into any class discussed under 23(b), the court may dismiss the action, Fed.R.Civ.P. 23(c)(1), or allow the action to proceed as an individual claim by amending the complaint to strike class action language. Fed.R.Civ.P. 23(d)(4).

### A. Standing:

Defendants suggest that Plaintiff lacks standing to prosecute this action on behalf of himself and the other class members. *Defs.' Br.* at 5, 15–16. The Eleventh Circuit has indicated that a proposed class representative must have standing to raise the claims of the class. *Cuban Am. Bar Ass'n, Inc. v. Christopher*, 43 F.3d 1412, 1423 (11th Cir.), *cert. denied*, ⸺ U.S. ⸺, 115 S.Ct. 2578, 132 L.Ed.2d 828 (1995), and *cert. denied*, ⸺

---

1. *See also Crum v. Housing Auth. of Tampa, Fla.*, 841 F.2d 376, 378 (11th Cir.1988) (citations omitted) ("A district court's class certification order will not be reversed unless the court abused its discretion or applied impermissible legal criteria or standards.").

U.S. ——, 116 S.Ct. 299, 133 L.Ed.2d 205 (1995); *Jones v. Firestone Tire & Rubber Co., Inc.,* 977 F.2d 527, 531 (11th Cir.1992), *cert. denied,* 508 U.S. 961, 113 S.Ct. 2932, 124 L.Ed.2d 682 (1993). To have such standing, a proposed representative must show he personally suffered the injuries underlying the class claims. *Griffin v. Dugger,* 823 F.2d 1476, 1482 (11th Cir.1987), *cert. denied,* 486 U.S. 1005, 108 S.Ct. 1729, 100 L.Ed.2d 193 (1988). For the reasons previously articulated, *see* 941 F.Supp. at 1137–38, the Court finds that Plaintiff has standing to bring this action on behalf of himself and the other putative class members.

## B. Rule 23(a) Prerequisites:

### 1. Numerosity:

The first requirement the Plaintiff must show is numerosity. While there is no fixed number required to demonstrate numerosity, "generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.), *cert. denied,* 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986). Plaintiff's mere allegations of numerosity are legally insufficient to comply with Rule 23(a)(1); however, the precise number of members of the class need not be shown. *Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925, 930 (11th Cir.1983). In addition, a court may consider a number of other facts pertaining to numerosity, including the ease with which the class members may be identified and the nature of the action. *Zeidman v. J. Ray McDermott & Co., Inc.,* 651 F.2d 1030, 1038 (5th Cir.1981)[2]. In reviewing this element, "a district court's determination of numerosity is considered final unless abuse is shown or unless the trial court applied impermissible legal criteria or standards." *Crawford v. Western Elec. Co., Inc.,* 614 F.2d 1300, 1305 (5th Cir.1980), *reh'g denied,* 620 F.2d 300.

The proposed class would be comprised of "all prisoners who have been sentenced to death by the State of Florida and are currently awaiting execution pending the resolution of their state and federal challenges to their state convictions and sentences." *Compl.* at ¶ 17. If the Act applies in Florida[3], then Chapter 154 (containing the new set of habeas procedures) applies to every member of the class who brings a habeas petition in federal court. *Cf. Ashmus v. Calderon,* 935 F.Supp. 1048, 1064 (N.D.Cal.1996) (same holding in action seeking declaratory and injunctive relief on whether California had opted in to the Act), *appeal filed,* No. 96–16141 (9th Cir.1996). Plaintiff represents that "[t]he precise number of members of the class is not currently known, but, based on information and belief, it is estimated that the plaintiff class contains at least 249 members. In addition, approximately two (2) persons are added to the class each month." *Pl.'s Br.* at 8. Michael Minerva, the Capital Collateral Representative for the State of Florida, testified at trial that there are between 360 and 370 death row inmates in Florida.[4] *Minerva Test., Tr.,* Doc. 38, at 51. *See also Defs.' Ex.* 5. Plaintiff also produced documentary evidence and testimony indicating that at the time of trial there were approximately thirty (30) indigent death-sentenced individuals in Florida who qualified for counsel under 28 U.S.C. § 2261, but remained unrepresented. *See Pl.'s Composite Exs.* 1 & 4; *Minerva Test.*

While Defendants make several arguments in support of their conclusion that Plaintiff has failed to demonstrate numerosity, only one merits discussion. Defendants maintain that Plaintiff's lack of specificity in identifying the precise size of the putative class, principally because of the inclusion of future class members, makes the class definition "too broad and ill-defined." *Defs.' Br.* at 10.[5]

---

2. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981), the Eleventh Circuit adopted as precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

3. The Act will only apply if Florida has opted in to the new habeas provisions. *See* 941 F.Supp. at 1134–35.

4. Mr. Minerva was the only witness who testified at the bench trial.

5. Defendants also argue that the "test case" approach is more suitable to this cause than class certification. Since this argument goes more towards the analysis under 26(b), the Court has addressed it in section I(C), *infra.*

However, the presence of an unknown number of future class members here actually bolsters a finding of the requisite numerosity. Defendants have become fixated upon the inability of Plaintiff to identify the size of the proposed class with numerical precision. This Circuit has held under similar circumstances:

> Such number comparisons miss the point of the Rule. The proper focus is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors. Here ... the alleged class includes future [members], necessarily unidentifiable. In such a case the requirement of Rule 23(a)(1) is clearly met, for "joinder of unknown individuals is certainly impracticable."

*Phillips v. Joint Legis. Comm. on Performance & Expenditure Review of Miss.*, 637 F.2d 1014, 1022 (5th Cir.1981) (quoting *Jack v. American Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir.1974) (per curiam)), *cert. denied*, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 483 (1982), *reh'g denied*, 457 U.S. 1140, 102 S.Ct. 2975, 73 L.Ed.2d 1361.[6] *Cf. Ashmus*, 935 F.Supp. at 1064 ("[S]olely by virtue of the fact that two to three 'unnamed and unknown future' persons are being added to the class each month, joinder in this case is 'inherently impracticable.'").

The Court finds that the members of the putative class are sufficiently numerous to satisfy Rule 23(a)(1). First, as discussed in the preceding paragraph, the presence of an unknown number of future class members makes joinder of all interested individuals impracticable. Second, even if the class were limited to the thirty-some class members actually identified by Plaintiff in his trial exhibits, the specific circumstances of the case *sub*

*judice* dictate that number is adequate under the law of this Circuit. *See Cox*, 784 F.2d at 1553. Moreover, this conclusion is bolstered by the fact that Plaintiff seeks declaratory and injunctive relief, and not monetary damages. *See Armstead*, 629 F.Supp. at 279. Consequently, the Court holds that Plaintiff has met his burden of proof as to numerosity.

## 2. Commonality:

In evaluating commonality and typicality, the considerations underlying these class requirements tend to merge[7]. *Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13; *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir.1985). Nevertheless, they should still be evaluated separately. A common question has been defined as "one which arises from a 'nucleus of operative facts' regardless of whether 'the underlying facts fluctuate over a class period and vary as to individual claimants.'" *Meyer*, 106 F.R.D. at 360 (citations omitted). In other words, variance among some of the questions of law and fact raised by members of a putative class is not necessarily fatal to their motion for class certification. *Cox*, 784 F.2d at 1557. The Court must look to Plaintiff's complaint to determine what common legal claims have been alleged. *Id.*

Plaintiff's complaint contains a long list of alleged common questions of law and fact. The purported common questions of law may be summarized as requiring an evaluation of whether the State of Florida has opted in to Chapter 154 of the Act. Similarly, Plaintiff contends that the common questions of fact require an assessment of whether the State of Florida has asserted, or will assert, that the habeas procedures contained in Chapter 154 apply to Plaintiff and the other class members. In addition, if Florida actually

---

**6.** Numerosity has been found in a number of other cases in this Circuit in which the precise size of a class could not be determined because of the inclusion of future class members. *See, e.g., Miller v. Carson*, 563 F.2d 741, 743 (5th Cir.1977), *reh'g denied*, 566 F.2d 106; *Armstead v. Pingree*, 629 F.Supp. 273, 279 (M.D.Fla.1986); *Meyer v. Citizens & Southern Nat'l Bank*, 106 F.R.D. 356, 360 (M.D.Ga.1985); *Georgia State Conf. of Branches of NAACP v. Georgia*, 99 F.R.D. 16, 25 (S.D.Ga.1983).

**7.** This merger occurs to "both help insure that the class action is economical and that the interests of other class members are fairly and adequately protected." *Nelson v. United States Steel Corp.*, 709 F.2d 675, 679 n. 8 (11th Cir.1983) (citation omitted). *See also Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 456 (11th Cir.1996) ("These factors provide the necessary link between the class representatives and the class members."), *petition for cert. filed* (U.S. Dec. 19, 1996) (No. 96–990).

has opted in to the Act, Plaintiff states that there are common questions of fact as to whether the State has actually complied with all the requirements under 28 U.S.C. §§ 2261 and 2265. *Compl.* at ¶¶ 19–20.

Although Defendants take issue with the relevance of some of the common questions alleged by Plaintiff, they apparently concede that commonality has at least been "minimally met." *Defs.' Br.* at 14. The Court concurs with that assessment. The parties have produced exhibits and testimony indicating that the same questions of law and fact raised by Plaintiff in this action have been asserted—or likely will be asserted—by putative class members in a number of pending federal habeas cases. Undoubtedly, all members of the class require a determination as to whether the procedures under Chapter 154 of the Act will apply to their individual petitions for federal habeas relief. Therefore, the Court finds that Plaintiff has satisfied commonality under Rule 23(a)(2).

### 3. Typicality:

■ The third requirement under Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." This prerequisite to class certification is predicated on ensuring that the plaintiff will actually present the claims of class members. *Meyer*, 106 F.R.D. at 361. Defendants accurately point out that typicality is met where the class representative has the same interest and suffers the same injury as the other class members. *See Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13. Nevertheless, an absolute identity of interests and injuries is not required: "A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332 (11th Cir.1984), *cert. denied*, 470 U.S. 1004, 105

S.Ct. 1357, 84 L.Ed.2d 379 (1985). *Accord Appleyard*, 754 F.2d at 958.

■ Defendants ground their challenge on the typicality requirement by taking exception with Plaintiff's standing to raise the class claims.[8] The Court has already separately addressed, and rejected, these arguments in Section I(A), *supra*. The fact that Plaintiff has standing to raise the class claims obviously supports the establishment of typicality. *See generally In re American Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir.1996) (Typicality is present when "a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff.") (citation omitted). Furthermore, the Court's finding that commonality has been established also tends to sustain typicality. *Ashmus*, 935 F.Supp. at 1066 (citing *Falcon*, *supra*).

■ In the case at bar, while the facts underlying each class member's federal habeas petition might differ, it is clear that the Court's ruling on the issues presented by the parties will have the same impact on how and when each of those petitions is presented.[9] The putative class members also apparently have the same interest in this litigation: obtaining a determination from the Court as to whether they are subject to the new habeas procedures under Chapter 154 of the Act. In addition, the exhibits presented to the Court show that Defendants have generally raised the same types of defenses in each of the federal habeas cases where a putative class member has argued that Chapter 154 is inapplicable to their petition. Therefore, the Court finds that Plaintiff's claim is typical of the claims of all the members of the putative class.

### 4. Adequacy of Representation:

■ The final prerequisite under Rule 23(a), adequate representation, dictates that

8. Specifically, Defendants claim that in Plaintiff's habeas case, they "have been silent with regard to whether the 1996 Act applies." Furthermore, Defendants represent that Senior District Judge William Stafford, who is presently entertaining Plaintiff's federal habeas petition, "has not sought from the Defendants any expression as to whether they are relying on the 1996 Act nor has the court taken any action to suggest that 1996 Act applies." *Defs.' Br.* at 15–16.

9. Assuming, of course, that Plaintiff's motion for class certification is granted.

(1) "the interests of the class representative is not antagonistic to, or in conflict with, other members of the class" and (2) "the representatives and their attorneys will competently and vigorously prosecute the suit." *Meyer,* 106 F.R.D. at 361 (collecting cases). This requirement "derives from the due process protections due those who are not before the court but will be directly bound by its decree." *Satterwhite v. City of Greenville,* 578 F.2d 987, 990 n. 2 (5th Cir.1978), *judgment vacated on other grounds,* 445 U.S. 940, 100 S.Ct. 1334, 63 L.Ed.2d 773 (1980). The adequacy of class representation is "primarily a factual issue that is best left for determination by the district court." *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 728 (11th Cir.1987), *reh'g denied,* 832 F.2d 1267. Defendants bear the burden of showing that Plaintiff and his counsel will be inadequate representatives. *See Smallwood v. Pearl Brewing Co.,* 489 F.2d 579, 592–93 n. 15 (5th Cir.1974).

■ Defendants vigorously contest the ability of Plaintiff and his counsel to satisfy Rule 23(a)(4). They initially profess that the Court cannot determine whether the interests of the class representative are antagonistic to the remainder of the class "since the class is ill-defined and the individualized interest of the provisional class has been ill-defined." *Defs.' Br.* at 17. Presumably, Defendants premise their argument on the inclusion in the putative class of an unknown number of future indigent death-sentenced inmates in Florida whose cases are not yet ripe for collateral federal habeas review. As the Court has already stated in its discussion of numerosity, the presence of an undefined number of future class members is not fatal to defining the class.[10] To the extent that Plaintiff has properly defined the putative class, the Court finds that his interests as class representative are not antagonistic towards the interests of the other class members. Plaintiff, like all members of the putative class, has a strong interest in determining whether Chapter 154 applies to his pending federal habeas petition.

Defendants next argue that Plaintiff's counsel, the Florida Office of Capital Collateral Representative ("CCR") is not competent to act as class counsel. As an initial matter, Defendants maintain that Florida Statutes Section 27.7001 (1996), *as amended,* bars CCR from representing death-sentenced individuals in civil litigation other than "collateral actions challenging the legality of the judgment and sentence imposed." *Defs.' Br.* at 18–19. Defendants filed an Emergency Petition for Writ of Quo Warranto in the Supreme Court of Florida, asking that CCR be precluded from acting as counsel for Plaintiff in this action. *See* Doc. 20. The petition was denied. *See Pl.'s Cl.Arg., Ex. 5.* Therefore, the Court declines to find CCR is disqualified as class counsel as a matter of Florida law.

Defendants also assert that insufficient funding and lack of qualified counsel render CCR incapable of adequately representing the interests of the class members. Defendants state that all of CCR's pleadings indicate that "due to underfunding, it cannot handle its present caseload, let alone take on a class action suit." Defendants further aver that the Court's earlier finding that the State of Florida has failed to adopt adequate competency standards for CCR demonstrates that its counsel are unqualified to prosecute this action. *Defs.' Br.* at 19–22; *Defs.' Cl. Arg.* at 6–8.

■ In deciding whether Plaintiff is an adequate class representative, the Court must examine the qualifications of class counsel. *North Am. Acceptance Corp. v. Arnall, Golden & Gregory,* 593 F.2d 642, 644 n. 4 (5th Cir.), *cert. denied,* 444 U.S. 956, 100 S.Ct. 436, 62 L.Ed.2d 328 (1979). Part of this examination dictates that the Court make a specific finding that the class counsel are "qualified, experienced, and generally able to conduct the proposed litigation." *Johnson v. Georgia Highway Express, Inc.,*

---

10. In addition, to the extent that Defendants are arguing that the class is ill-defined because of the speculative nature of the claims of certain present or future class members, the Court has already rejected this argument. *See* 941 F.Supp. at 1138–40. *See also Ashmus,* 935 F.Supp. at 1065 (rebuffing efforts by defendants to redefine the class to exclude proposed class members who did not currently have pending federal habeas claims).

417 F.2d 1122, 1125 (5th Cir.1969). The Court agrees with Defendants that in these proceedings, CCR has consistently argued it does not have sufficient funding to provide competent counsel to its clients, the putative class members. Nevertheless, the Court does not believe that CCR's purported lack of funding [11] will affect its ability to vigorously prosecute this action. As the Court has previously observed, the case at bar does not involve a complex factual or legal inquiry, *see* 941 F.Supp. at 1149, and this order provides a final decision (from this Court) on the merits of the parties' dispute. Moreover, the Court finds that the specific CCR attorneys who have prosecuted this action have the requisite qualifications [12], and have adequately litigated matters on behalf of the putative class members [13]. In fact, CCR and its attorneys have already been authorized by statute to represent all of the class members—with the exception of any individuals it cannot represent due to conflict—in their federal collateral proceedings. *See* Fla.Stat. §§ 27.702–.703 (1996). It is therefore likely that CCR attorneys would litigate these same matters in individual class members' cases, if class certification were denied. As a result, CCR's attorneys are qualified to act as class counsel.

Perhaps the most serious charge that Defendants level at CCR is that its attorneys have a "significant conflict" with the interests of the putative class members they seek to represent. Defendants contend that CCR has chosen to file motions to stay and hold in abeyance the habeas petitions of some of the putative class members, which are presently before this and other federal courts, pending the disposition of this case. According to Defendants, CCR is willing to "sacrific[e] the rights of the individual capital defendant for the benefit of the whole class." Furthermore, Defendants argue that CCR is prosecuting the case *sub judice* for the sole purpose of obtaining more funding and staffing for itself. Defendants conclude that class representation should be denied because CCR's interests have become inimical to those of the class members. *Defs.' Br.* at 20–22; *Defs.' Cl.Arg.* at 8.

Adequacy of representation undoubtedly includes the requirement that class counsel be free of conflict with the class members they seek to represent. *E.g. Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13; *North Am. Acceptance*, 593 F.2d at 644. The Court finds that CCR and its counsel of record are free of such conflict. Rather than prejudicing individual class members by filing motions to stay in other proceedings, CCR has apparently sought to protect those individuals by ensuring that there is a final resolution of the issue of what procedures will govern their federal habeas petitions. To the extent that CCR is using this case as a vehicle to obtain additional funding and resources [14], the class members will ultimately be the beneficiaries of such relief—if

---

11. The Court declines to take a position on the adequacy of CCR's funding. *See also* 941 F.Supp. at 1148 (noting that the Court can examine the merits of the case at bar "without dictating matters of policy and finance to the Florida Legislature.").

12. The three named counsel have practiced in not only the United States District Courts of this state, but also before the Supreme Court of Florida, the Eleventh Circuit, and a number of other state and federal appellate courts. *See McClain Dep.*, Doc. 22; *Minerva Test.* Counsels' extensive litigation experience demonstrates their competency to proceed as class counsel in the instant case. The mere fact that Mr. Minerva admitted in his testimony that he has not mastered the intricacies of federal habeas practice, *see Tr.* at 30, does not alter this conclusion.

13. It appears from the record that CCR has been timely in its filings. In addition, CCR counsel have done a commendable job of accurately and

succinctly briefing the factual and legal issues that are presently before the Court—a far cry from the quality of briefs the Court has become all too accustomed to receiving from CCR in its habeas petitions. *See* 941 F.Supp. at 1145 n. 28. The Court hopes that the quality of CCR's motion practice in this case will be reflected in CCR's future federal habeas petitions.

14. *See generally Compl.* at ¶ 34 ("Although the State of Florida has created the Office of the Capital Collateral Representative, that office is not adequately funded to represent all indigent individuals sentenced to death in Florida."); *id.* at ¶ 41 ("... Such a determination by the Florida Supreme Court that CCR counsel must be provided eleven months given the parameters of CCR's budget precludes a finding that the State of Florida has 'opted-in' to Chapter 154 ...").

any—that is forthcoming from the Florida Legislature.

Consequently, for all the reasons set out above, the Court finds that Plaintiff will adequately represent the interests of the absent putative class members in this action. Since the Court has concluded that all of the prerequisites under Rule 23(a) have been met, it is now appropriate for the Court to turn its analysis to the types of classes which may be certified pursuant to Rule 23(b).

### C. Maintenance of a class under Rule 23(b):

Plaintiff seeks to certify this class under either Rule 23(b)(1) or 23(b)(2). The Federal Rules of Civil Procedure provide that

[a]n action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

\* \* \* \* \* \*

Fed.R.Civ.P. 23(b). The Court finds that the case at bar can be maintained under any one of these three categories of classes. It is unnecessary for the Court to elaborate its reasons in any great detail, however, since the analysis conducted by the *Ashmus* court is readily applicable here. *See* 935 F.Supp. at 1066–67.

Nevertheless, the Court deems it prudent to briefly address two arguments raised by Defendants in their briefs. Defendants initially state that class certification is unnecessary "because the injunctive relief sought will certainly benefit all those they seek to include in the class." *Defs.' Br.* at 23. It is true that "[i]njunctive relief which benefits non-parties may sometimes be proper even where the suit is not brought as a Rule 23 class action." *Meyer v. Brown & Root Constr. Co.,* 661 F.2d 369, 374 (5th Cir.1981). It is also true that "classwide injunctive relief may be appropriate in an individual action." *Carmichael v. Birmingham Saw Works,* 738 F.2d 1126, 1136 (11th Cir.1984). However, in the instant case, Plaintiff has demonstrated all of the requirements under Rule 23 after moving for class certification. Plaintiff has further convinced the Court that absent judicial relief, each member of the putative class will be forced "to choose between either (1) complying with [Chapter 154] and sacrificing procedural rights he might otherwise have if the State of Florida has in fact not opted into Chapter 154; or (2) not complying with that Chapter, thereby sacrificing his procedural rights under the Chapter if the State of Florida has in fact opted into it." 941 F.Supp. at 1138. Under these circumstances, class-wide injunctive relief is clearly appropriate.[15]

Defendants have also suggested that the "test case" approach is more suitable than a class action. Defendants' premise this argument on the belief that the issues could be more efficiently resolved through presentation by individual class members. In addition, Defendants contend that "presuming this case is the 'test case', the final order could accomplish the same and resolve any class action, because it would have precedential impact under the principles of stare

---

**15.** Moreover, treatment of these common questions of law and fact through a single class action will better allow the State of Florida to attain a more expeditious sense of finality on this issue. Not only will the Court's factual and legal findings be *res judicata* as to all the class members, it will also ensure that appellate relief, if any is sought and obtained by the Defendants, will be equally binding on the class members.

decisis and collateral estoppel on all cases which involve the State's qualifying under the 1996 Act." *Defs.' Br.* at 10–13. *See also Defs.' Cl.Arg.* at 2–5. Thus, Defendants ask the Court to deny class certification for these reasons as well.

 Collateral estoppel [16] of a test case on subsequent actions sometimes presents a reasonable alternative to class action. *See generally Windham v. American Brands, Inc.*, 565 F.2d 59, 69 (4th Cir.1977) (finding that justification for class certification is absent "if a 'test case' approach will likely accomplish the same result under principles of collateral estoppel without involving the court in a morass of individual claims that will bog the court system down interminably."), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 758–62 (3d Cir.) (discussing when the test case approach is superior to a class action), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). However, Defendants' contention that collateral estoppel is a more suitable vehicle for resolution of individual class members' claims is without merit. Defendants are essentially asking the Court to undertake a superiority analysis pursuant to 23(b)(3), notwithstanding the fact that Plaintiff seeks certification under 23(b)(1) and (2). A superiority analysis has no relevance here. *See, e.g., Penland v. Warren County Jail*, 759 F.2d 524, 531 (6th Cir.1985), *appeal decided*, 797 F.2d 332 (6th Cir.1986); *Norris v. Frame*, 585 F.2d 1183, 1189–90 n. 18 (3d Cir.1978).[17]

**16.** Collateral estoppel, also known as issue preclusion, "bars the relitigation of matters that were actually litigated and decided in a prior suit." *Pelletier v. Zweifel*, 921 F.2d 1465, 1501 (11th Cir.), *cert. denied*, 502 U.S. 855, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991).

**17.** *Compare with Wilson v. Tinicum Township*, No. 92–6617, 1993 WL 280205 (E.D.Pa. July 20, 1993), wherein the court reasoned:
Defendants' assertion that the collateral estoppel effect of a single test case will preclude the township from continuing its alleged practices seems to be directed towards the relief sought by plaintiffs' proposed injunctive classes. However, the plaintiffs' [sic] seek certification of the injunctive classes under Rule 23(b)(2), which, unlike Rule 23(b)(3), does not require a

## D. Summary:

Plaintiff has carried his burden of establishing all the requirements under Rule 23. As a result, Plaintiff's motion for class certification (Doc. 21) is GRANTED. The Court certifies this action pursuant to Fed.R.Civ.P. 23(b)(1) and (2). The class shall consist of the following persons:

> All prisoners who have been sentenced to death by the State of Florida and are currently awaiting execution pending resolution of their state and federal challenges to their state convictions and sentences.

Plaintiff Clarence Edward Hill, having being found by this Court to adequately represent the interests of the members of the class and represented by competent counsel who have vigorously prosecuted this cause, is hereby designated as class representative.

## II. Propriety of Granting Permanent Injunctive Relief:

The elements of a permanent injunction essentially mirror those of a preliminary injunction, except of course that the plaintiff must show actual success on the merits. *See Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 1404 n. 12, 94 L.Ed.2d 542 (1987).[18] A district judge's decision to grant a permanent injunction will not be reversed absent an abuse of discretion. *Simmons v. Conger*, 86 F.3d 1080, 1085 (11th Cir.1996).

Findings made on an application for a preliminary injunction are not controlling at a later hearing on a permanent injunction. *E. Remy Martin & Co., S.A. v. Shaw–Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1528 n. 1 (11th

superiority determination. In fact, ... certification under Rule 23(b)(2) is particularly appropriate in cases such as the instant action where the injunctive relief sought is against discriminatory practices or when a plaintiff seeks to define a relationship between the defendants and the world at large.
*Id.* at *9.

**18.** *See also Temple Univ. v. White*, 941 F.2d 201, 214–15 (3d Cir.1991) (elements of permanent injunction include irreparable harm, success on the merits, inadequacy of legal remedies, and balancing of competing claims of injury and the public interest), *cert. denied*, 502 U.S. 1032, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992).

Cir.1985), *reh'g denied*, 765 F.2d 154. Nevertheless, based on the additional evidence presented at trial, the Court reaffirms its preliminary findings [*see* 941 F.Supp. at 1129–50], and holds that issuance of a permanent injunction is warranted. The Court will briefly outline some of the additional factual matters presented by the parties. It is unnecessary to address in any detail the arguments made by Defendants, since they have either been previously rejected by the Court or are otherwise without merit.

■ Plaintiff has demonstrated that the State of Florida does not provide adequate "standards of competency" for post-conviction counsel. *See* 28 U.S.C. § 2261(b). Mr. Minerva testified that there are only two statutory requirements for competency in Florida: "Membership in the Florida Bar and two years' experience in the practice of law." *Minerva Test., Tr.* at 24. Defendants have not offered evidence of any other statute or rule of court or agency that supplements these very minimal standards.[19] The Court previously discussed at great length why such standards are inadequate under the Act. *See* 941 F.Supp. at 1141–44.[20] The deficiencies suffered by Florida's present

**19.** Defendants have argued in their brief that CCR's actual internal practices result in oversight of all its cases by a competent attorney "with at least two and one half years of actual postconviction experience." Therefore, Defendants conclude that "it would defy all logic for this Court to find that Florida does not comply with § 2261(b)." *Defs.' Cl.Arg.* at 12–13. However, even if such internal practices exist, they would be insufficient to comply with the opt-in provisions of Chapter 154 of the Act. The Act envisions *statutes or rules* established by a State's "court of last resort, or by another agency *authorized by State law*." 28 U.S.C. § 2261(b) (emphasis added). It does not appear that CCR is authorized by any statute to establish such competency standards. In fact, the Supreme Court of Florida apparently is the only state entity with power to establish competency standards for the practice of law in Florida. *See generally* Fla. Const. art. V, § 15 ("The supreme court shall have exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted."); *The Florida Bar v. Schramek*, 616 So.2d 979, 987 (Fla.1993) (a primary responsibility of the Court "is to define and regulate the practice of law to protect the public from 'incompetent, unethical, or irresponsible representation.'") (quoting *The Florida Bar v. Moses*, 380 So.2d 412, 417 (Fla.1980)). Moreover, even if CCR had power to establish competency standards in collateral proceedings, its own practices simply do not rise to the level of the competency "statute" or "rule" required by Chapter 154. *Cf. Mata v. Johnson*, 99 F.3d 1261, 1267 (5th Cir.1996) ("Texas has failed to comply fully with § 2265's requirements, as it has not 'establishe[d] by statute, rule of court of last resort, or by another agency authorized by State law' *specific, mandatory standards* for capital habeas counsel. Therefore, we conclude that Texas is not yet eligible to take advantage of the provisions afforded opt-in states under the AEDPA.") (emphasis added); *Satcher v. Netherland*, 944 F.Supp. 1222, 1244 (E.D.Va.1996) ("[T]he Act requires that the 'mechanism' must be put down in a concrete fashion where it can be seen and relied upon, rather than be something which is subject to the vagaries of differing interpreta-

tions of what is done 'in practice.'"). As a result, Defendants have failed to rebut Plaintiff's showing that the State of Florida does not have competency standards which comply with the Act.

**20.** A number of courts have reached similar conclusions about competency standards in other states. *See Mata*, 99 F.3d at 1267 (Texas); *Ashmus*, 935 F.Supp. at 1072–74 (California); *Austin v. Bell*, 927 F.Supp. 1058, 1061–62 (M.D.Tenn. 1996) (Tennessee); *Booth v. Maryland*, 940 F.Supp. 849, 852–53 (D.Md.1996) (Maryland). In Virginia, the State's Public Defender Commission is authorized to develop competency standards for the appointment of counsel in capital cases:

A. The Public Defender Commission, in conjunction with the Virginia State Bar, shall adopt standards for the appointment of counsel in capital cases, which take into consideration, to the extent practicable, the following criteria: (i) license or permission to practice law in Virginia; (ii) general background in criminal litigation; (iii) demonstrated experience in felony practice at trial and appeal; (iv) experience in death penalty litigation; (v) familiarity with the requisite court system; (vi) experience in death penalty litigation; and (vii) demonstrated proficiency and commitment to quality representation.

Va.Code § 19.2–163.8. There has been a split of authority over whether Virginia's competency standards are sufficient. In *Satcher*, the court held that the statute itself contained the requisite competency standards. 944 F.Supp. at 1242–43. Conversely, in *Wright v. Angelone*, the court held that the statute did not qualify as standards, but instead were merely guidelines for the establishment of such standards. The *Wright* court went on to find that Virginia had not adopted competency standards pursuant to these guidelines. 944 F.Supp. 460, 466–67 (E.D.Va.1996). In any event, both Virginia District Courts held that Virginia did not qualify as an "opt-in" state under the Act. *Id.* at 468; *Satcher*, 944 F.Supp. at 1245.

competency standards become particularly evident when compared to the American Bar Association's guidelines for postconviction counsel. *See Pl.'s Ex.* 3, Tab 17, AMERICAN BAR ASSOCIATION GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF COUNSEL IN DEATH PENALTY CASES 59–64 (Feb.1989) (*"Guidelines"*).[21]

■ The evidence also shows that the State of Florida has not provided the offer of counsel contemplated by 28 U.S.C. § 2261. As the Court has addressed in much greater length in its discussion on class certification, the number of unrepresented indigent death-sentenced individuals seeking post-conviction relief has fluctuated a great deal during the pendency of this litigation. There were at least thirty (30) such individuals at trial. Presently, there are at least eleven (11) of these individuals.[22] Presumably, there are additional unrepresented individuals who have been added to this group since the trial some two months ago.

There are also several unrepresented individuals who CCR cannot represent because of conflict. After several months of uncertainty over whether CCR would be responsible for managing a separate unit providing conflict counsel[23], Defendants advised the Court that the State of Florida will instead be following the conflict appointment procedures set out in Florida Statutes Section 27.703 (1996). That provision provides:

> If at any time during the representation of two or more persons, the capital collateral representative determines that the interests of those persons are so adverse or

21. The ABA proposes that "[a]ssignment to represent indigents in postconviction proceedings in capital cases should be distributed to attorneys who":

 i. are members of the bar admitted to practice in the jurisdiction or admitted to practice *pro hac vice;* and
 ii. are experienced and active trial practitioners with at least three years litigation experience in the field of criminal defense; and
 iii. have prior experience as counsel in no fewer than five jury or bench trials of serious and complex cases which were tried to completion, as well as prior experience as postconviction counsel in at least three cases in state or federal court. In addition, of the five jury or bench trials which were tried to completion, the attorney should have been counsel in at least three cases in which the charge was murder or aggravated murder; or alternatively, of the five murder trials, at least one was a murder or aggravated murder trial and an additional three were felony jury trials; and
 iv. are familiar with the practice and procedure of the appropriate courts of the jurisdiction; and
 v. have attended and successfully completed, within one year prior to their appointment, a training or educational program on criminal advocacy which focused on the postconviction phase of a criminal case, or alternatively, a program which focused on the trial of cases in which the death penalty is sought; and
 vi. have demonstrated the necessary proficiency and commitment which exemplify the quality of representation appropriate to capital cases.

*Guidelines*, at 59–60. Of the two counsel who the ABA advises be assigned to each postconviction cases, it is further recommended that at least one possesses appellate experience. *Id.* at 60. Finally, the ABA concludes by stating: "This Guideline recognizes that fulfillment of the experiential criteria or its equivalent is *a necessary, but not a sufficient*, prerequisite for attorney eligibility. There may be instances where an attorney's background objectively satisfies the experiential criteria, but his or her past performance did not represent the level of proficiency or commitment necessary for the adequate representation of a client in a capital case." *Id.* at 62.

22. These individuals include Lloyd Allen, Robin Archer, Darryl Barwick, James Dailey, Charles Finney, Guy Gamble, Mark Geralds, James Hunter, Emanual Johnson (I & II), and Curtis Windom. *Pl.'s Ex.* 1.

23. Former Florida Attorney General Robert Shevin recommended that the Florida Legislature "provide additional, separate funding in the range of $750,000 to $1 million, to create a [Volunteer Lawyers' Resource Center ("VLRC")]-type program within CCR to handle the 41 former VLRC cases"—which included 24 cases that CCR could not handle because of conflict. ROBERT L. SHEVIN, SUPREME COURT OF FLORIDA, STUDY OF THE CAPITAL COLLATERAL REPRESENTATIVE 22 (Feb. 26, 1996), *reprinted at* 941 F.Supp. at 1162. The Florida Legislature responded by appropriating $236,000 to CCR to create and operate a conflict unit. CCR then elicited the opinions of the VLRC board and the Professional Ethics Committee of the Florida Bar concerning whether it could create sufficient separation between the conflict unit and other CCR staff to ethically oversee the unit. The VLRC board apparently did not believe it was possible; however, CCR did not receive a definitive response from the Florida Bar. After a number of attempts to recruit attorneys for the conflict unit failed because of the lingering ethical issues, CCR abandoned its efforts. *Minerva Test., Tr.* at 17–19. *See also Defs.' Exs.* 3 & 4.

hostile that they cannot all be counseled by the capital collateral representative or his or her staff without conflict of interest, the sentencing court shall upon application therefor by the capital collateral representative appoint one or more members of The Florida Bar to represent one or more of such persons. Appointed counsel shall be paid from funds appropriated to the Justice Administrative Counsel.

Fla.Stat. § 27.703. On October 23, 1996, the Supreme Court of Florida issued an Administrative Order directing all sentencing courts in the state to follow the guidance of this statute. On October 25, 1996, Justice Overton, acting on behalf of the State Supreme Court, appointed State Circuit Judge Susan Schaeffer to monitor the appointment process. *Defs.' Exs.* to *Defs.' Cl.Arg.* Approximately $220,000 has been transferred from CCR's budget to the Florida Justice Administration Commission for the appointment and reimbursement of conflict counsel. *Pl.'s Ex.* 6 to *Pl.'s Cl.Arg.* Despite the State of Florida's actions, it does not appear that counsel have been appointed yet for at least five (5) class members who CCR is conflicted out of representing.[24]

In addition, for most of the class members—including those individuals who actually have specifically designated CCR counsel—the Supreme Court of Florida has extended the due dates for the filing of their post-conviction motions well beyond the 180 day time period contemplated under 28 U.S.C. § 2263(a). *See Pl.'s Ex.* 1. Mr. Minerva, the CCR, explained the designation procedure, and how it has been applied to one class member, as follows:

> MR. MINERVA: The counsel designation date has been established by a—excuse me, by a schedule, a filing schedule that was promulgated by the court that assigns—designates the dates when CCR is to appoint counsel, and then 11 months

from that date is the filing date for the 3.850 motion.

> * * * * * *

> MR. MINERVA: The Florida Supreme Court has a committee that includes justices of the court, the Attorney General, representatives of the Attorney General's Office, the Governor's Office, Governor's Office legal staff, and budget, sometime budget people come, CCR. And as a result of one—at one of those meetings in which the caseloads were being discussed and the budget and the Shevin report was being discussed, the court distributed this exhibit [*Pl.'s Ex.* 1, Tab 5] to the participants in that meeting.

> MR. McCLAIN: And has the court followed that exhibit in the time period since it was distributed?

> MR. MINERVA: After we got this, the court then began issuing orders approximately a month in advance of the date that counsel should be designated, and with some minor exceptions of maybe being off one or two days. The court has followed that schedule issuing orders.

> * * * * * *

> MR. McCLAIN: ... [T]he first—first name on the list ... is Lloyd Allen. What is the status of counsel for him?

> MR. MINERVA: Well, he does not have counsel.

> MR. McCLAIN: And can you explain the circumstances of that?

> MR. MINERVA: Yes. His certiorari denial was March 25th of 1996. The Florida Supreme Court's schedule ... anticipates a file date, counsel designation date of February 19th, '97, and a 3.850 filing date of January 19th, 1998.

> * * * * * *

> MR. McCLAIN: Well, let me ask if in terms—in terms of CCR's obligation to provide him counsel, Lloyd Allen, does he fit within the eligibility requirements for CCR representation?

---

**24.** These individuals are Ronald Williams, Michael Coleman, Henry Espinosa, Donald Dillbeck, and Bennie Demps. *See Pl.'s Ex.* 4. Four other individuals identified by CCR as unrepresented because of conflict, Marvin Johnson, Dan Routly, Gerald Stano, and Frank Valdes, apparently have since had counsel appointed to represent them. *See Defs.' Ex.* 5.

MR. MINERVA: Yes.

MR. McCLAIN: And when he became eligible, did you request relief from the Florida Supreme Court in terms of providing specific counsel?

MR. MINERVA: Yes. We—we filed notices of—a notice of inability to designate counsel based on the fact that the—the workload of the attorneys in the office and the capacity of the—of the entire office was such that we could not provide effective assistance of counsel, as is required under the law, to Mr. Allen at the time he became eligible for appointment of CCR counsel.

MR. McCLAIN: Now, on this chart there is asterisks by a number of names. Are they in the same or similar circumstances to Mr. Allen?

MR. MINERVA: Yes. Their dates would be different but their situation would be the same.

*Tr.* at 11–12. All of the foregoing evidence is sufficient by itself to demonstrate the State of Florida's failure to make the meaningful offer of counsel required under Chapter 154 of the Act. Furthermore, it supports the Court's preliminary findings on this issue. *See* 941 F.Supp. at 1144–47. Therefore, the Court finds that Plaintiff and the other class members are entitled to the declaratory and permanent injunctive relief which they seek.

### III. Conclusion:

The new habeas procedures established under Chapter 154 of the Antiterrorism and Effective Death Penalty Act of 1996 institute a radical departure in federal collateral review of state death sentences and capital convictions underlying those sentences. The legislation was specifically designed to ameliorate the defects in Chapter 153 of the Judicial Code, whereby capital defendants could effectively preclude their sentences from being carried out through repetitive federal habeas filings. In addition, Chapter 154 imposes deadlines for the filing of federal habeas petitions, as well as expedited review of those petitions by the district and appellate courts. However, Congress did not necessarily intend for the new habeas provisions to apply to every state. Instead, Congress established a *quid pro quo* arrangement whereby a state could avail itself of Chapter 154 and the finality of judgment it helped secure, in exchange for providing competent counsel and reasonable litigation funding to indigent capital prisoners in post-conviction proceedings. The evidence has shown that while the State of Florida has taken a number of steps to opt into the new habeas provisions, its efforts have nonetheless fallen short of the standards established under Chapter 154 of the Judicial Code. As a result, the State of Florida cannot take advantage of the new habeas provisions at this time, and must instead follow the rules and procedures set forth in Chapter 153 of the Judicial Code.

In so holding, the Court takes note that Plaintiff and his CCR counsel have asked for additional legal determinations which have not been addressed in this order. Specifically, Plaintiff seeks rulings that under Chapter 154, post-conviction counsel are rendered incompetent without caseload standards [25], and that CCR is underfunded to provide the requisite level of representation. The Court expressly declines to accept Plaintiff's invitation to address these matters, since the existing backlog of cases and absence of any significant competency standards provide a sufficient basis to find that Florida is not an opt-in state. It would be improper to engage in speculation, or otherwise provide an advisory opinion, as to the actions which Defendants must take to bring the State of Florida under the rubric of Chapter 154 of the Judicial Code. Suffice to say, to the extent that such guidance is needed by Defendants, the plain language of the statute, as well as the orders of this and other courts, adequately define the appropriate standards.

Accordingly, based upon the foregoing, it is hereby

### ORDERED AND ADJUDGED:

---

**25.** That is, a provision for the maximum number of post-conviction capital cases assigned to each CCR attorney.

1. Plaintiff's motion for class certification (Doc. 21) is GRANTED.

(a) The Court certifies this as a class action pursuant to Fed.R.Civ.P. 23(b)(1) and (2).

(b) The class shall consist of the following persons:

All prisoners who have been sentenced to death by the State of Florida and are currently awaiting execution pending resolution of their state and federal challenges to their state convictions and sentences.

(c) Plaintiff Clarence Edward Hill is designated as class representative.

2. To the extent that the preliminary findings made by the Court in its August 7, 1996, order [as set out in 941 F.Supp. 1129] are consistent with this order, the Court adopts those findings, and incorporates them by reference herein.

3. The Court holds that Chapter 154 of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, Title I, § 101 *et seq.*, 110 Stat. 1214 (1996) (codified as 28 U.S.C. §§ 2261–66) is inapplicable to Plaintiff Clarence Edward Hill and other members of the plaintiff class described in paragraph 1(b) of this order, until and unless the Defendants demonstrate that the State of Florida has complied, with the requirements of the "opt-in" provisions.

4. The Court finds that the provisions of Chapter 153 of the Judicial Code, 28 U.S.C. §§ 2241–55, provide the procedures which govern the conduct of federal habeas corpus proceedings initiated by Plaintiff Clarence Edward Hill and other members of the plaintiff class described in paragraph 1(b) of this order.

5. Defendants are permanently enjoined from invoking or asserting, in any state or federal proceeding, that the State of Florida may avail itself of the procedures in Chapter 154 of the Judicial Code, 28 U.S.C. §§ 2261–66, until such time as Defendants have demonstrated that they have satisfied all of the "opt-in" provisions to that Chapter, as discussed in this order. This injunction is to remain in full force and effect until further order of the Court.

6. The Court retains jurisdiction for a period of sixty (60) days for the dual purposes or assessing attorney fees and costs and/or to determine the right of any party to intervene in this action for the purpose of establishing the applicability of Chapter 154 of the Judicial Code, as applied to Plaintiff Clarence Edward Hill and other similarly situated individuals.

7. Any application for attorney fees must be filed by Plaintiff Clarence Edward Hill by February 15, 1997.

8. The clerk is directed to enter judgment for Plaintiff Clarence Edward Hill and close this case, subject to the retained jurisdiction for the limited purposes herein specified.