Sammie Richard EARNEST, Patrick
I. Gustin and Elmer P. Welch,
Plaintiffs,

v.

GENERAL MOTORS CORPORATION, a
corporation, and Delco Electronics Corporation, a corporation, Defendants.

No. CV–96–N–0151–W.

United States District Court,
N.D. Alabama,
Western Division.

April 19, 1996.

Henry C. Wiley, Jr., Laird & Wiley, P.C., Jasper, AL, Garve Ivey, Jr., King Ivey & Junkin, Jasper, AL, Clatus K. Junkin, King & Ivey, Fayette, AL, Barry A. Ragsdale, King & Ivey, Birmingham, AL, for Sammie Richard Earnest.

Henry C. Wiley, Jr., Laird & Wiley, P.C., Jasper, AL, Garve Ivey, Jr., King Ivey & Junkin, Jasper, AL, Clatus K. Junkin, King & Ivey, Fayette, AL, for Patrick I. Gustin, Elmer P. Welch.

M. Christian King, Warren B. Lightfoot, Lightfoot Franklin & White, Birmingham, AL, Dorothy Y. Kirkley, David M. Monde, Jones Day Reavis & Pogue, Atlanta, GA, for defendants.

## ORDER

EDWIN L. NELSON, District Judge.

### I. Introduction.

This is a products liability action that was removed from the Circuit Court of Pickens County under 28 U.S.C. § 1446, on January 18, 1996. The crux of the plaintiffs' complaint is that the defendants allegedly designed and installed defective engines and/or engine control modules in various models of General Motors automobiles. The named defendants are General Motors Corporation ("GM") and Delco Electronics Corporation ("Delco"). The case is presently before the court on the plaintiffs' motion to remand and the defendants' motion to strike or dismiss plaintiffs' class allegations. The motions have been briefed and were orally argued on February 28, 1996. They are ripe for decision. The motion to remand will be denied and the motion to dismiss the class allegations will be granted.

### II. Allegations of the Complaint.

Plaintiffs Sammie Richard Earnest, Patrick I. Gustin, and Elmer P. Welch purport to bring this action on behalf of themselves and approximately ten thousand other similarly situated persons.[1] They aver that be-

---

1. The plaintiffs claim to speak for and ask the court to certify a class of plaintiffs consisting of

cause of allegedly defective engine control modules, the described vehicles are subjected to unpredictable stalling episodes, subjecting the plaintiffs to a greater risk of personal injury and causing a reduction in the value of the vehicles. The plaintiffs make a number of claims: alleged failure to warn of the alleged defects, breach of warranty, negligence and/or wantonness, fraud/misrepresentation/deceit, fraudulent suppression of the truth, civil conspiracy and the Alabama Extended Manufacturers Liability Doctrine. They seek both compensatory and punitive damages but purportedly, on behalf of each named and unnamed class member, limit damages to fifty thousand dollars per individual plaintiff. They also request comprehensive injunctive and declaratory relief, including, *inter alia,* a required advertising campaign to notify putative class members of the alleged defect, a recall of all affected vehicles, and an injunction prohibiting the use of the allegedly defective engines and/or engine control modules.

### III. The Motion to Remand.

■ The plaintiffs admit that there is diversity of citizenship among the parties, but argue that subject matter jurisdiction is lacking because the amount in controversy does not exceed fifty thousand dollars. 28 U.S.C. § 1332. Where the plaintiffs' claim for damages is unspecified "a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $50,000 jurisdictional requirement." *Tapscott v. MS Dealer Service Corp.,* 77 F.3d. 1353, 1357 (11th Cir. 1996); see also, *Gafford v. General Elec. Co.,* 997 F.2d 150, 160 (6th Cir.1993).[2] In the present case, the plaintiffs make an unspecified demand for compensatory and punitive damages, which they purport to limit to $50,000 per plaintiff and argue that the demand of each plaintiff, named and unnamed, must be viewed in isolation, disregarding the total

amount of the claims, when determining the amount in controversy for jurisdictional purposes. Principles recently enunciated by the Eleventh Circuit Court of Appeals in *Tapscott* demonstrate case law does not support the plaintiffs' argument.

### A. Aggregation of Punitive Damages.

■ Traditionally, separate and distinct claims of multiple plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement of 28 U.S.C. § 1332. *Snyder v. Harris,* 394 U.S. 332, 335, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319 (1969). However, "when several plaintiffs unite to enforce a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount." *Pinel v. Pinel,* 240 U.S. 594, 596, 36 S.Ct. 416, 416, 60 L.Ed. 817 (1916); *Snyder,* 394 U.S. at 335, 89 S.Ct. at 1056. The plaintiffs' claims in the present case are founded on an alleged defect in the design and manufacture of the same engine control module installed on certain GM automobiles which have allegedly damaged all the plaintiffs in a common way. For their claimed injuries, the plaintiffs have asserted a claim for punitive damages.

In *Tapscott,* the plaintiffs filed suit in state court alleging claims on behalf of a putative class for alleged violations of Alabama law arising from the sale of service contracts on automobiles sold and financed in Alabama. *Tapscott,* at 1355. A defendant removed the case to federal court, asserting diversity jurisdiction under 28 U.S.C. § 1332, arguing that the claims for punitive damages of the individual defendants should be aggregated to determine whether the jurisdictional amount existed. *Id.* The plaintiffs then moved to remand claiming, *inter alia,* failure to satisfy § 1332's amount in controversy requirement. *Id.* In upholding the district court's denial of remand, the Eleventh Circuit held that under Tapscott's facts punitive

---

"any persons in the State of Alabama who own or lease, or have in the past owned or leased vehicles equipped with engines and/or engine control modules manufactured, sold, assembled and/or designed by the Defendants such as those in the said vehicles of the named Plaintiffs." Complaint at p. 19.

2. In *Burns v. Windsor Insurance Co.,* 31 F.3d 1092, 1094 (11th Cir.1994), the United States Court of Appeals held that when a plaintiff specifically claims less than $50,000, a removing defendant must prove to a "legal certainty" that the plaintiff would not recover less than $50,000 if she prevailed.

damages may be considered in the aggregate when determining the amount in controversy for jurisdictional purposes. *Id.* at 1357–1359. In so holding, the court examined the nature of punitive damages under Alabama law, *id.,* and the court found that the purpose of punitive damages in Alabama is "to deter wrongful conduct and punish those responsible." *Id.* at 1359, citing *Reserve Nat'l Ins. Co. v. Crowell,* 614 So.2d 1005, 1009 (Ala.), *cert. denied,* —— U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993). The court also noted that "the state not the victim is considered the true party plaintiff because punitive damages do not compensate a victim for loss but serve to punish and deter." *Tapscott,* at 1358, citing *Maryland Casualty Co. v. Tiffin,* 537 So.2d 469, 471 (Ala.1988). Furthermore, the court found that a punitive damages award reflects the egregiousness of the defendant's conduct towards the putative class members as a whole, not just the wrong claimed to have been done to any individual plaintiff. *Tapscott,* at 1358–1359. The court held that the plaintiffs there had a common and undivided interest in any punitive damages award and allowed aggregation.[3] *Id.* at 1359.

 The facts in the case at bar are analogous to those in *Tapscott.* This case and *Tapscott* are putative class actions with approximately ten thousand putative class members. In each case, the harm to each individual plaintiff is relatively small; however, any punitive damages award will be based not on the defendants' conduct towards each individual, but on the defendants' course of conduct as a whole. Furthermore, in this case as in *Tapscott,* the defendants are not concerned with the distribution of the punitive damages among the plaintiffs, but with the overall size of any such award. These similarities are sufficient to place the case at bar under the *Tapscott* aggregation rule. Accordingly, the putative class may aggregate the punitive damages claim to satisfy the jurisdictional requirement. *See Tapscott,* 77 F.3d 1353.

**B. Equitable Relief.**

In addition to monetary damages, the plaintiffs claim injunctive and declaratory relief. The injunctive relief requested by the plaintiffs would require the defendants to:

(a) Be permanently enjoined from using engines and/or engine control modules such as those in the said vehicles;

(b) Be required by an order of this Court to enter into an advertising campaign at their own cost to adequately warn and notify those persons who own and/or lease vehicles which contain engines and/or engine control modules such as or similar to the Plaintiffs' of the defective nature and unreasonably unsafe, undependable, and unreliable conditions of the engines and/or the engine control modules;

(c) Be required to enter into a campaign to replace, at the cost of the Defendants, the engines and/or engine control modules in the Plaintiffs' vehicles and all other similarly equipped vehicles;

(d) Such other, further, different and general injunctive or special relief as the Court may deem to be appropriate under the premises.

(Complaint, at p. 18).

 The equitable relief sought in this case would benefit the putative class as a whole and not just any individual plaintiff. As such, each plaintiff has a common interest in the injunctive and declaratory relief. *See Holmes v. Continental Can Co.,* 706 F.2d 1144, 1160 (11th Cir.1983) ("Class members in a Title VII class action have common interests in obtaining injunctive relief against future discrimination."). Because the class has a common interest in the equitable relief, it is enough that their collective interest equal the jurisdictional amount. *See Pinel,* 240 U.S. at 596, 36 S.Ct. at 416.

 The United States Supreme Court has held that "in actions seeking declaratory

---

**3.** The court also relied on *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326 (5th Cir.1995), where the Fifth Circuit held that, in Mississippi, plaintiffs may have a common and undivided interest in a claim for punitive damages against a defendant. In *Allen,* the Fifth Circuit allowed the full amount of alleged punitive damages to be counted against each plaintiff in determining the jurisdictional amount because the conduct to be punished arose from a single act or series of acts. *Id.*

or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adv. Comm'n,* 432 U.S. 333, 347–48, 97 S.Ct. 2434, 2443, 53 L.Ed.2d 383 (1977); *Occidental Chemical Corp.* 995 F.2d 1046, 1047 (11th Cir.1993). Thus, federal jurisdiction is established if the value of the equitable relief demanded exceeds the jurisdictional threshold. *Packard v. Banton,* 264 U.S. 140, 44 S.Ct. 257, 68 L.Ed. 596 (1924); *see also Hunt,* 432 U.S. at 347–48, 97 S.Ct. at 2443–44. The value of the equitable relief is measured by its pecuniary consequence to those involved in the litigation. *Thomson v. Gaskill,* 315 U.S. 442, 447, 62 S.Ct. 673, 676, 86 L.Ed. 951 (1942). Accordingly, "costs of compliance are properly considered in computing the amount in controversy." *Id.,* 315 U.S. at 447, 62 S.Ct. at 676; *Justice v. Atchison, Topeka and Santa Fe Ry. Co.,* 927 F.2d 503, 505 (10th Cir.1991); *See also Hunt,* 432 U.S. at 348, 97 S.Ct. at 2443 (advertising costs to the defendant included in computing the amount in controversy.).

The plaintiffs have requested equitable relief in the form of an advertising campaign, comprehensive vehicle recall, and an injunction forbidding the defendants from using the allegedly defective engines and/or engine control modules. It is clear that compliance with the requested equitable relief would cost the defendants much more than fifty thousand dollars. Therefore, the court finds the amount in controversy requirement of 28 U.S.C. § 1332 satisfied.

## IV. The Motion to Strike the Class Allegations.

■ The court turns now to the defendants' motion to strike or dismiss the plaintiffs' class allegations. The defendants contend that the plaintiffs have failed to satisfy their burden of establishing the threshold requirements for maintaining a class action under Rule 23. *See Gilchrist v. Bolger,* 733 F.2d 1551, 1556 (11th Cir.1984) (Plaintiffs bear the burden of proving their right to

maintain a class action.). The court agrees. As a preliminary matter, the plaintiffs must establish that there exists a legally definable "class" that can be ascertained through reasonable effort. *See DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir.1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."); *Hardy v. United States Steel Corp.,* 289 F.Supp. 200, 202 (N.D.Ala.1967) (The complaint must contain a clear definition of the class in order to avoid undue complications or conflicts in subsequent proceedings.); *see also Hendrickson v. Philadelphia Gas Works,* 672 F.Supp. 823, 841 (E.D.Penn.1987). In other words, the class must meet a minimum standard of definiteness which will allow the trial court to determine membership in the proposed class.[4] Failure to meet this minimum standard entitles a court to dismiss the class allegations and proceed with the action on an individual basis. *See Equal Employment Opportunity Comm'n v. D.H. Holmes Co., Ltd.,* 556 F.2d 787, 791 n. 5 (5th Cir.1977).

■ In the case at bar, the plaintiffs define the class as "any persons in the State of Alabama who own or lease, or have in the past owned or leased vehicles equipped with engines and/or engine control modules manufactured, sold, assembled and/or designed by the Defendants such as those in the said vehicles of the named Plaintiffs." (Complaint, at p. 19). Upon examination, the court finds that the proposed class is so broad, amorphous, and vague that it fails to meet the minimum standard of definiteness. *See DeBremaecker,* 433 F.2d at 734. The class definition is devoid of any definition or description of what is intended by the phrase "engines and/or engine control modules ... such as those in plaintiffs' vehicles." In addition, there is no guidance with regard to what vehicles would constitute a vehicle "such as plaintiffs'," and the phrase "any persons in the state of Alabama" is subject to

---

4. The court recognizes that "[i]t is not necessary that the members of the class be so clearly identified that any member can be presently ascertained." *Carpenter v. Davis,* 424 F.2d 257, 260 (5th Cir.1970).

multiple interpretations.[5] Because the class definition offered by the plaintiffs could potentially mean anything the plaintiffs want it to mean at any particular time, it would be virtually impossible to determine membership in the class. Accordingly the class claims are due to be dismissed. *See Id.* (Class defined as "residents of this State active in the 'peace movement' who have been harassed and intimidated as well as those who fear harassment and intimidation in exercising their First Amendment right of free expression in the form of passing out leaflets in furtherance of their cause ... does not constitute an adequately defined or clearly ascertainable class."); *Hardy,* 289 F.Supp. at 203.

## V. Conclusion.

For the foregoing reasons, the plaintiffs' motion to remand is hereby **DENIED.** Additionally, because the proposed class definition is too vague and amorphous to be reasonably ascertainable, the defendants' motion to strike or dismiss the class allegations is **GRANTED,** and the class allegations are hereby **DISMISSED.** The plaintiffs are allowed thirty (30) days from the date on which this order is entered to amend to adequately describe the class they purport to represent.

5. Presumably, membership in the class could fluctuate as persons who either owned or leased motor vehicles "such as plaintiffs'" drove those vehicles through the state, entering at one border and exiting a few hours later at another.