Rodney ANDERSON, Raymon Bennett, Johnny Cain, Earnest Daniel, Corey Doomes, Lawrence Epps, Tyler Johnson, Jerry Marks, Timothy Noland, Anthony Richards, Jeffery Ross, Jody Smith, Joe Thomas, and Marshall Tolbert, inmates of the Georgia Department of Corrections (GDC), on behalf of themselves individually and for a class of all GDC inmates who will be subjected to "shakedowns," Plaintiffs,

v.

Wayne GARNER, Commissioner of the Georgia Department of Corrections, in his individual and official capacities; A.G. Thomas, Director of Facilities, in his individual and official capacities; Lieutenant John Brady, Sergeants Calvin Davis and Joe Johnson, Correction Officers Dowdell, Frazier, Stevenson, and Robert Watson, in their individual capacities, Defendants.

Civil Action No. 4:96–CV–0322–HLM.

United States District Court,
N.D. Georgia,
Rome Division.

Sept. 11, 1997.

ORDER

HAROLD L. MURPHY, District Judge.

This is a civil rights action filed by 14 Georgia prison inmates who allege that State correctional officers used excessive force during "shakedowns" at the prisons, with the consent and encouragement of State prison officials. Plaintiffs seek compensatory and punitive damages, as well as injunctive relief on behalf of a class of similarly situated inmates, pursuant to 42 U.S.C.A. § 1983 (1994). The case is before the Court on Plaintiffs' Motion for Class Certification [13].

For the reasons set forth below, the Court agrees that this case is appropriate for class certification under Federal Rule of Civil Procedure 23(b)(2). During its consideration of this issue, however, the Court has discovered that Plaintiffs must overcome a substantial hurdle in order to assert standing for injunctive relief. This Order thus grants Plaintiffs' Motion for Class Certification, but orders the parties to follow an expedited briefing schedule with respect to the standing issue.

Stephen Brooks Bright, Robert Frederick Bensing, Katharine Aiken Huffman, Southern Center for Human Rights, Atlanta, GA, Joel Levi, L. Elizabeth Bowles, Prakash Rajamani Donna Patterson, Kitty Behan, Arnold & Porter, pro hac vice, for Plaintiffs.

John C. Jones, Stacey L. Ferris–Smith, Diane Festin LaRoss, David J. Manmurs, Office of State Attorney General, Atlanta, GA, J. Timothy Mast, Long Aldridge & Norman, Atlanta, GA, Bruce McCord Edenfield, Gray Hedrick & Edenfield, Atlanta, GA, George M. Weaver, Hugh William Rowling, Jr., Holberg Weaver & Kytle, Atlanta, GA, Timothy Hal Bendin, Phillip Edward Friduss, Hall Booth Smith & Slover, Atlanta, GA, Theodore Freeman, Dana Kristin Maine, Freeman Mathis & Gary, Atlanta, GA, Frank Phillips Harris, Harris Morgan & Parson, Marietta, GA, Judy Farrington Aust, Goodman McGuffey Aust & Lindsey, Atlanta, GA, for Defendants.

## I. Background

Plaintiffs allege that, on July 10, 1996, Defendants performed "shakedowns" at the Hays State Prison located in Trion, Georgia, and the Walker State Prison located in Rock Springs, Georgia. (Complaint ¶ 1.) A shakedown occurs when members of one of 21 "Tactical Squads," consisting of State corrections officers selected from various GDC facilities, conducts an unannounced inspection of a State prison's living areas.[1] (Id. ¶ 2.) The Tactical Squad members perform body frisks of all the inmates residing in the prison and search all the inmates' living areas in an effort to locate contraband. (Id.)

Plaintiffs allege that, during two shakedowns conducted on July 10, 1996, correctional officers punched, kicked, and otherwise assaulted "dozens" of unresisting inmates, while prison officials witnessed the beatings and did nothing to interrupt them. (Id. ¶¶ 34–74.) Plaintiffs further allege that

---

1. "Shakedowns" also occur "in-house" when the inspections are performed by correctional officers employed at the prison in which the shakedown occurs. This case involves only those shakedowns performed by Tactical Squad officers, at the direction of Defendants Wayne Garner and A.G. Thomas. (Plaintiffs' Mot. for Class Certification ¶ 3.)

these prison officials include Defendant Wayne Garner, Commissioner of the Georgia Department of Corrections ("GDC"), and Defendant A.G. Thomas, Director of Facilities for GDC. (*Id.*)

Plaintiffs filed their Complaint on November 19, 1996, seeking an injunction requiring Defendants Garner and Thomas to end the alleged use of excessive force by Tactical Squad officers during shakedowns of GDC facilities. (Complaint ¶ 90.) Plaintiffs also seek compensatory and punitive damages for injuries they allegedly sustained at the hands of Tactical Squad officers during the shakedowns. (*Id.*)

Plaintiffs filed the instant Motion for Class Certification on February 12, 1997. Pursuant to Federal Rule of Civil Procedure 23(b)(2), Plaintiffs seek certification of a class comprised of all GDC inmates who will be subjected to future shakedowns led by Defendants Garner and/or Thomas, their successors, and their agents and assigns. (Plaintiffs' Mot. for Class Certification at 1.)

## II. Standard of Decision

A request to proceed as a class action is governed by Federal Rule of Civil Procedure 23. Plaintiffs bear the burden of establishing that they have satisfied each of Rule 23's certification requirements. *See In re Domestic Air Transp. Antitrust Litig.,* 137 F.R.D. 677, 683 (N.D.Ga.1991).

■ When assessing a motion for class certification, the Court does not inquire whether Plaintiffs have adduced sufficient evidence to prevail on the merits of their civil rights claims. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Hudson v. Delta Air Lines, Inc.,* 90 F.3d 451, 456 (11th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1082, 137 L.Ed.2d 217 (1997). Nonetheless, the Court performs a "rigorous analysis" of the arguments put forth in support of certifying the class. *Gilchrist v. Bolger,* 733 F.2d 1551, 1556 (11th Cir.1984). When performing this analysis, the Court is not limited solely to the

substance of the parties' pleadings; indeed, the Court may require the parties to adduce evidence relevant to the class certification issue:

> The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action. [cits.] *Sometimes the issues are plain enough from the pleadings* to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and *sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.*

*General Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (emphasis added); *Hudson,* 90 F.3d at 457.

When deciding whether to certify a class under Rule 23(b)(2), the Court inquires whether Plaintiffs' claim for injunctive relief addresses conduct that is generally applicable to the proposed class. Fed.R.Civ.P. 23(b)(2).[2] The focus thus is on the nature of Plaintiffs' claims, minimizing the need to scrutinize evidence that will be adduced to support the claims. *Compare In re Polypropylene Carpet Antitrust Litig.,* 178 F.R.D. 603, 610–11, 614 (N.D. Ga.1997) (because motion for class certification pursuant to Rule 23(b)(3) requires court to examine whether the evidence to be used by plaintiffs at trial is common to class, court must perform preliminary review of plaintiffs' proposed evidence).

■ Nonetheless, analysis of a class certification motion "often mandates that the Court look to the law and the facts which comprise the Plaintiffs' class action claims." *Telecomm Technical Serv., Inc. v. Siemens Rolm Communications, Inc.,* 172 F.R.D. 532, 543 (N.D.Ga.1997). To the extent an examination of the evidence in the record is necessary, the Court inquires only whether evidence exists to support Plaintiffs' claims, not

---

**2.** Rule 23(b)(2) allows an action to be maintained as a class action if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropri-

ate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).

whether the evidence can survive factual challenges levied by Defendants. *Domestic Air,* 137 F.R.D. at 684 (at class certification stage, the court "scrutinize[s] the evidence plaintiffs propose to use in proving their claims without unnecessarily reaching the merits of the underlying claims"). In sum, the Court will ensure "through information submitted outside of the pleadings that the requirements of Rule 23 are met, not whether plaintiffs' claims are viable." *Telecomm Technical,* 172 F.R.D. at 543.

## III. Whether the Prison Litigation Reform Act Bars Plaintiffs' Motion for Class Certification

Before turning to the merits of Plaintiffs' Motion for Class Certification, the Court must address one argument raised by Defendants concerning the applicability of Section 802 of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. 104–134, 110 Stat. 1321 (1996), *codified at* 18 U.S.C.A. § 3626 (1985), to prisoner class actions.

■ Section 802 limits a federal court's discretion to grant prospective equitable relief to prisoners challenging the conditions of their confinement. 18 U.S.C.A. § 3626(a)(1). The relevant section provides:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

*Id.* Defendants seize upon this language to proclaim that Congress has "unmistakably sen[t] a message that the time of overbroad prisoner class actions has passed. Courts, therefore should diligently refrain from certifying classes, like the present one, which would require the federal courts to main[tain] security and control of the state prison system." (Defendants' Brief in Resp. to Plaintiffs' Mot. for Class Certification at 2.)

The Court fails to educe the same message as Defendants from the statutory language quoted above. Section 3626(a)(1) addresses only the *type* of relief courts may use to redress constitutional violations, and says nothing about the nature of the proceedings underlying the remedy ordered by the court. *See Alexander S. v. Boyd,* 113 F.3d 1373, 1380 (4th Cir.1997) (Section 802 limits the available *remedies* in actions challenging conditions of confinement brought under federal law); *Williams v. Edwards,* 87 F.3d 126, 133 (5th Cir.1996) ("The district court has fashioned no prospective relief, [therefore] the provisions of [§ 3626] have yet to be triggered in this case.... [F]or now, [§ 3626] does not affect this case."); *see also Franklin v. District of Columbia,* No. Civ.A. 94–0511(JHG), 1997 WL 403418 (D.D.C. July 8, 1997) (ordering injunctive relief under § 3626(a)(1) in class action). If the Court at a later date concludes that injunctive relief is warranted in this case, the Court then will rely upon § 3626(a)(1) as appropriate. *Williams,* 87 F.3d at 133 ("In the future ..., if the district court should ... find a violation of a 'Federal right,' then any remedy it might fashion must conform to the standards set forth in [§ 3626].").

The Court therefore is not persuaded that the PLRA in any way affects the Court's consideration of Plaintiffs' Motion, and will apply the existing law governing class certification.

## IV. Class Certification Under Rule 23

When presented with a class certification motion, the Court first determines whether Plaintiffs have satisfied the requirements of Rule 23(a), and then proceeds to verify that the proposed class falls within one of the categories described in Rule 23(b). *Hill v. Butterworth,* 170 F.R.D. 509, 512 (N.D.Fla. 1997). Plaintiffs seek to certify a class pursuant to Rule 23(b)(2), which permits litigation by a class of plaintiffs if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief ... with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).

**1384**

At the outset, the Court observes that numerous courts presented with facts similar to the instant case have certified class actions pursuant to Rule 23(b)(2) and issued injunctive orders that governed the conduct of prison officials. *E.g., LaMarca v. Turner,* 995 F.2d 1526, 1541–1544 (11th Cir.1993) (affirming and vacating portions of injunctive order entered in Rule 23(b)(2) class action brought by present and future inmates of the Glades Correctional Institution in Belle Glade, Florida, who alleged inmate-on-inmate assaults and rapes); *Hoptowit v. Ray,* 682 F.2d 1237, 1245, 1250–51 (9th Cir.1982) (affirming portions of injunctive order enjoining use of unnecessary physical force against prisoners by prison guards in Rule 23(b)(2) class action brought by present and future inmates of the Washington State Penitentiary); *In re Southern Ohio Correctional Facility,* 173 F.R.D. 205, 208 (S.D.Ohio 1997) (approving settlement of Rule 23(b)(2) class action brought by prisoners who alleged, among other things, use of excessive force by prison guards); *Austin v. Pennsylvania Dep't of Corrections,* 876 F.Supp. 1437, 1444 (E.D.Pa.1995) (approving settlement of Rule 23(b)(2) class action brought by inmates of 13 state prisons who alleged, among other things, "a pattern and practice of excessive, malicious, and unjustified use of force by correctional officers against inmates, which the defendant [prison officials] have failed to discipline or otherwise control").

The Court nonetheless must fulfill its obligation to perform a "rigorous analysis" of the prerequisites to class certification. *Gilchrist,* 733 F.2d at 1556. The Court therefore proceeds to examine whether the law and facts underlying Plaintiffs' claims satisfy Rule 23.

**A. Rule 23(a) Analysis**

Rule 23(a) requires Plaintiffs to show:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). The Court considers each criterion in turn.

**1. Numerosity**

 The numerosity requirement is satisfied if the proposed class is so numerous that joinder of all members is impracticable. Fed.R.Civ.P. 23(a)(1). Plaintiffs "generally must proffer some evidence or a reasonable estimate of the number of members comprising the purported class." *In re Disposable Contact Lens Antitrust Litig.,* 170 F.R.D. 524, 529 (M.D.Fla.1996). The proper focus is not on numbers alone, however, but also "on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Hill,* 170 F.R.D. at 514. Finally, impracticality does not mean that joinder is impossible; Plaintiffs "need only show that it would be extremely difficult or inconvenient to join all members of the class." *Domestic Air,* 137 F.R.D. at 698.

 Plaintiffs seek to certify a class consisting of themselves and all GDC inmates who may be subjected to shakedowns performed by Tactical Squad officers at the direction of Defendants Garner or Thomas. Given Plaintiffs' representation that this class includes thousands of inmates, the Court believes the class is sufficiently numerous to satisfy Rule 23(a)(1). The Court further believes that joinder of all these parties would be sufficiently difficult to warrant class certification.

A second element of the numerosity requirement is that the proposed class meet a minimal standard of identifiability. Although "[i]t is not necessary that the members of the class be so clearly identified that any member can be presently ascertained, ... [Plaintiffs] must establish that there exists a legally definable 'class' that can be ascertained through reasonable effort." *Earnest v. General Motors Corp.,* 923 F.Supp. 1469, 1473 & n. 4 (N.D.Ala.1996) (quotations and citations omitted). The class simply must meet a "minimum standard of definiteness which will allow the trial court to determine membership in the proposed class." *Id.* The fact that

the proposed class contains future, unidentified members does not counsel against certification of the class. *Hill,* 170 F.R.D. at 514 (citing *Phillips v. Joint Legislative Comm. on Performance and Expenditure Review of State,* 637 F.2d 1014, 1022 (5th Cir.1981)).

Plaintiffs do not specify how they will determine membership in the proposed class. The Court believes identification of class members is possible, and likely will not impede certification of the class. The Court therefore finds that Plaintiffs have satisfied the requirements of Rule 23(a)(1), but orders Plaintiffs to submit within 10 days a supplemental brief describing how they plan to determine membership in the proposed class.

## 2. Commonality

To satisfy the commonality requirement, Plaintiffs must show the presence of questions of law *or* fact common to the entire class. Fed.R.Civ.P. 23(a)(2). Analysis of the commonality requirement tends to merge with the typicality requirement, but the elements nonetheless should be evaluated separately. *Hill,* 170 F.R.D. at 514.

■ A common question is "one which arises from a 'nucleus of operative facts,' regardless of whether 'the underlying facts fluctuate over a class period and vary as to individual claimants.'" *Id.* (quoting *Meyer v. Citizens & Southern Nat'l Bank,* 106 F.R.D. 356, 360 (M.D.Ga.1985)). In other words, the commonality requirement is satisfied even though members of the proposed class present different factual or legal bases for their claims, so long as there are factual or legal issues that are common to the proposed class. *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1557 (11th Cir.1986); *Appleyard v. Wallace,* 754 F.2d 955, 958 (11th Cir.1985).

■ In the instant case, the legal issues will be the same for all members of the proposed class, including: (1) whether members of the Tactical Squad used excessive force during the shakedowns on July 10, 1996; and (2) whether Defendants Garner and Thomas encouraged, facilitated, and ratified the use of excessive force during the shakedowns, thereby creating a custom or policy of excessive force during shakedowns. The Court therefore concludes that this case satisfies the commonality requirement of Rule 23(a)(2), regardless of whether different facts underlie the class members' individual claims. *Cox,* 784 F.2d at 1557; *Appleyard,* 754 F.2d at 958.

## 3. Typicality

■ The typicality requirement is satisfied if the claims and defenses of the representative parties are typical of the claims and defenses of the class. Fed.R.Civ.P. 23(a)(3). A representative plaintiff's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and her or his claims are based on the same legal theory." *Domestic Air,* 137 F.R.D. at 698 (quoting 3 Herbert B. Newburg, *Newburg on Class Actions* § 18.08, at 462 (2d ed.1985)). In other words, the Court simply inquires whether the named representatives' claims "have the same essential characteristics as the claims of the class at large." *Appleyard,* 754 F.2d at 958 (quoting 7A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1764 (1st ed.1972)). The requirement may be satisfied "even though varying fact patterns support the claims or defenses of individual class members, or there is a disparity in the damages claimed by the representative parties and the other members of the class." *Domestic Air,* 137 F.R.D. at 698 (quoting 7A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure: Civil § 1764 (2d ed.1986)).

■ The Court believes Plaintiffs' claims arise from the same events and legal theories that give rise to the claims of the proposed class members. These events and legal theories include whether members of the Tactical Squad used excessive force during shakedowns and whether Defendants Garner and Thomas encouraged and ratified such conduct. Although, when compared to the Plaintiffs' claims, the unnamed class members may have suffered different injuries under different circumstances, the nature of the proposed class members' claims remains the same. *Domestic Air,* 137 F.R.D. at 699.

The Court therefore concludes that Plaintiffs' claims satisfy the typicality requirement of Rule 23(a)(3).

### 4. Adequacy

█ To satisfy the adequacy requirement, Plaintiffs must show that they, as class representatives, will fairly and adequately protect the interests of the class. Fed. R.Civ.P. 23(a)(4). This involves a two-part inquiry: (1) whether Plaintiffs possess interests that are antagonistic to the interests of other class members, and (2) whether the proposed class' counsel possesses the qualifications and experience to conduct the litigation. *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 726 (11th Cir.1987); *Telecomm Technical,* 172 F.R.D. at 544.

█ With respect to the potential antagonism of interests, the Court believes the named Plaintiffs and the proposed members share a common interest in eliminating allegedly unconstitutional practices employed by Defendants. Moreover, the equitable remedy sought by Plaintiffs will inure to the benefit of all members of the proposed class. The fact that the named Plaintiffs seek money damages in addition to equitable relief does little to change this fact. The Court therefore concludes that the named Plaintiffs and the members of the proposed class have compatible interests in this case.

With respect to the qualifications and experience of Plaintiffs' counsel to conduct this litigation, the Court notes that Defendants do not contest the fact that Plaintiffs' counsel satisfies this requirement. The Court is familiar with Plaintiffs' counsel and knows well their ability to handle the proposed class action. For purposes of the record, however, Plaintiffs' counsel must submit, along with the submission discussed in Part III.A.1. *supra,* copies of counsel's resumes showing their qualifications and experience with class action litigation.

At this time, however, the Court is persuaded that Plaintiffs have satisfied the requirements contained in Rule 23(a)(4).

### B. Rule 23(b)(2) Analysis

In addition to satisfying all the criteria contained in Rule 23(a), Plaintiffs must satisfy the requirements set forth in Rule 23(b)(2).

The language of Rule 23(b)(2) can be distilled to two basic requirements: (1) the opposing party's conduct or refusal to act must be "generally applicable" to the class; and (2) final injunctive or corresponding declaratory relief must be requested for the class. Wright, Miller, & Kane, *supra,* § 1775, at 447–48.

### 1. Whether Defendants' Conduct Is "Generally Applicable" to the Proposed Class

The term "generally applicable" does not require "that the party opposing the class . . . act directly against each member of the class. The key is whether his actions would affect all persons similarly situated so that his acts apply generally to the whole class." Wright, Miller, & Kane, *supra,* § 1775, at 448. Thus, "[a]ll the class members need not be aggrieved by or desire to challenge the defendant's conduct in order for one or more of them to seek relief under Rule 23(b)(2)." *Johnson v. American Credit Co. of Georgia,* 581 F.2d 526, 532 (5th Cir.1978);[3] *Georgia State Conference of Branches of NAACP v. State,* 99 F.R.D. 16, 35 (S.D.Ga.1983). "What is necessary is that the challenged conduct or lack of conduct be premised on a ground that is applicable to the entire class." *Georgia NAACP,* 99 F.R.D. at 35–36.

Defendants rely heavily on an Eleventh Circuit opinion observing that determinations whether an officer used excessive force "cannot be made en masse, and such suits therefore are especially unsuited for class disposition." *Kerr v. City of West Palm Beach,* 875 F.2d 1546, 1558 (1989). The *Kerr* court, however, considered whether a class should be certified pursuant to Rule 23(b)(3), which tests whether the plaintiffs will rely at trial on evidence that is common to all class mem-

---

**3.** Opinions of the Fifth Circuit issued prior to October 1, 1981, the date marking the creation of the Eleventh Circuit, are binding precedent on this Court. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209–11 (11th Cir.1981) (en banc).

bers. *Id.* at 1558–59. In the instant case, Plaintiffs seek class relief pursuant to Rule 23(b)(2), which imposes no such obligations pertaining to Plaintiffs' evidence at trial. Indeed, Rule 23(a)(2)'s commonality requirement is satisfied if Plaintiffs present common questions of law. *See* Part IV.A.2. *supra.* This conclusion is reinforced by the fact that Judge Tjoflat, author of the *Kerr* opinion, subsequently affirmed an injunctive order remedying fact-finding claims of assault and rape obtained by a class of prison inmates proceeding under Rule 23(b)(2). *See LaMarca,* 995 F.2d at 1541–1544 (Tjoflat, J.). The Court therefore cannot rely on the *Kerr* dictum as authority barring class certification in this case.

■■■ The Court believes the practices and conduct alleged by Plaintiffs, if proven, apply generally to all members of the proposed class. Plaintiffs have adduced 55 declarations from inmates at five different GDC facilities who state that they suffered various injuries as a result of excessive force by Tactical Squad officers during shakedowns. (*See* Attachments to Plaintiffs' Brief in Supp. of Mot. for Class Certification.) This evidence does not conclusively establish that the alleged abuse occurred or that all inmates subjected to such shakedowns suffered such abuse. Such an evidentiary burden, however, is not imposed on Plaintiffs at this stage of the litigation. Rather, Plaintiffs' evidence shows that the conduct of the Tactical Squad officers applies generally to members of the proposed class, thus satisfying the "generally applicable" requirement of Rule 23(b)(2). *Cf. LaMarca,* 995 F.2d at 1541–1544 (affirming injunctive order issued to Rule 23(b)(2) class consisting of prisoners); *Kendrick v. Bland,* 740 F.2d 432 (6th Cir.1984) (affirming portions of injunctive order preventing use of excessive force by prison guards at the Kentucky State Penitentiary, after inmates litigated in district court as Rule 23(b)(2) class); *Hoptowit,* 682 F.2d at 1245, 1250–51 (affirming injunctive order issued to Rule 23(b)(2) class consisting of prisoners); *In re Ohio Correctional Facility,* 173 F.R.D. at 208 (approving settlement of Rule 23(b)(2) class action brought by prison inmates); *Austin,* 876 F.Supp. at 1444 (same); *Murillo v. Musegades,* 809 F.Supp. 487, 502–03 (W.D.Texas 1992) (certifying Rule 23(b)(2) class consisting of Hispanic citizens who alleged, among other things, use of excessive force by El Paso Border Patrol officers); *Patrykus v. Gomilla,* 121 F.R.D. 357, 362–63 (N.D.Ill. 1988) (certifying Rule 23(b)(2) class consisting of homosexual and bisexual men who alleged use of excessive force by police during raid of nightclub); *Curtis v. Voss,* 73 F.R.D. 580, 582–83 (N.D.Ill.1976) (certifying Rule 23(b)(2) class consisting of all inmates at Stateville Correctional Center based on allegations of excessive force by prison guards).

### 2. Whether Final Injunctive Relief Is Requested for the Proposed Class

■■■ Plaintiffs seek an injunction requiring Defendants Garner and Thomas to prevent the use of excessive force by Tactical Squad officers during shakedowns of GDC facilities. (Complaint ¶ 90.) The fact that Plaintiffs also seek compensatory and punitive damages does not eliminate their eligibility to seek class certification pursuant to Rule 23(b)(2); certification under Rule 23(b)(2) is inappropriate only if the claims for money damages predominate over the claims for injunctive relief. *Collins v. International Dairy Queen, Inc.,* 168 F.R.D. 668, 675 (M.D.Ga.1996).

The Court therefore concludes that Plaintiffs have satisfied this requirement of Rule 23(b)(2).

### C. Plaintiffs' Standing to Seek Injunctive Relief

Courts have held that plaintiffs must establish that they possess standing to seek injunctive relief before a court may certify a class pursuant to Rule 23(b)(2). *E.g., Griffin v. Dugger,* 823 F.2d 1476, 1482 (11th Cir. 1987) ("Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others."); *Howard v. City of Greenwood,* 783 F.2d 1311, 1312 n. 2 (5th Cir.1986) (certification of action under Rule 23(b)(2) "was inappropriate because the

plaintiffs had no standing to seek injunctive relief"). Defendants do not argue that Plaintiffs lack standing to seek injunctive relief, and Plaintiffs address the issue only obliquely. (Plaintiffs' Brief in Supp. of Class Certification at 10–13.) The standing issue nonetheless implicates the Court's jurisdiction to order the requested relief; the Court therefore must examine Plaintiffs' standing even in the absence of an express challenge by Defendants. *Cone Corp. v. Florida Dep't of Transp.*, 921 F.2d 1190, 1203 & n. 42 (11th Cir.1991).

 Under Article III of the Constitution, Plaintiffs must meet three requirements to possess standing to seek injunctive relief. *Id.* at 1203. Plaintiffs must demonstrate: (1) they are likely to suffer future injury; (2) the future injury is likely to result from the acts of Defendants; and (3) the injunctive relief sought will likely prevent the future injury from occurring. *Id.* at 1203–04. "The most important [element] is the injury requirement." *Id.* at 1204.

 To demonstrate a sufficient likelihood of future injury, Plaintiffs must present "specific, concrete facts" showing that the challenged conduct will result in a "demonstrable, particularized injury" to Plaintiffs, so that Plaintiffs will "personally benefit in a tangible way" from court action. *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 508, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). Furthermore, the injury must be "real and immediate," not "conjectural" or "hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Finally, because Plaintiffs are alleging constitutional claims, the injuries must consist of deprivations of constitutional rights. *Cone*, 921 F.2d at 1204.

In *Kerr v. City of West Palm Beach*, 875 F.2d 1546 (1989), The Eleventh Circuit applied the standing doctrine to a case involving allegations of excessive force by police officers using police dogs in West Palm Beach, Florida. 875 F.2d at 1553–54. The court held that the plaintiffs lacked standing to seek the requested declaratory and injunctive relief. *Id.* Relying heavily on the Supreme Court's decision in *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), the circuit court cautioned that courts "should not consider the constitutionality of municipal policies in the abstract; instead, *Garner* teaches that the federal courts are to focus only on the constitutionality of specific applications of a challenged policy to specific factual circumstances." *Id.* at 1553. Thus, to establish standing in such a case, the plaintiffs would:

> have had to not only allege that [they] would have another encounter with the police but also to make the incredible assertion either (1) that all police officers .... always [use excessive force on] any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation, or for questioning, or (2) that [the defendant] ordered or authorized police officers to act in such a manner.

*Id.* at 1554 (quoting *Lyons*, 461 U.S. at 105–06, 103 S.Ct. 1660). Moreover, the orders from or authorization by the defendants "would have to be express," such as ordering police officers to use excessive force even when the subject had not provoked or engaged in resistance to the officer. *Id.*

The *Kerr* court held that the plaintiffs failed to satisfy these stringent requirements to establish standing for two reasons. *Id.* at 1554. First, the plaintiffs did not contend that they would again be unlawfully seized by the city's police dogs in the future. *Id.* Second, the plaintiffs did not show that the city required its police officers and police dogs to use excessive force on unresisting citizens. *Id.*

Plaintiffs apparently intend to distinguish the instant case from *Kerr* by alleging that (1) Plaintiffs are at substantial risk of suffering injuries in the future at the hands of Tactical Squad officers, and (2) the constitutional violations in this case are the result of a policy or custom condoned by State prison officials. (Plaintiffs' Brief in Supp. of Mot. for Class Certification at 10–13.)

With respect to Plaintiffs' risk of future injuries at the hands of Tactical Squad officers, Plaintiffs cannot rely solely upon evidence of past injuries. "Past wrongs are evidence bearing on whether there is a real

and immediate threat of repeated injury, [but] past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Church v. City of Huntsville,* 30 F.3d 1332, 1337 (11th Cir.1994) (quoting *O'Shea v. Littleton,* 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), and *Lyons,* 461 U.S. at 102, 103 S.Ct. 1660). Rather, Plaintiffs' evidence[4] must show that, "for reasons beyond the plaintiff's control, he or she is unable to avoid repeating the conduct that led to the original injury at the hands of the defendant." *Id.* at 1338 (citing *Honig v. Doe,* 484 U.S. 305, 320, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)). To proceed under this theory, then, Plaintiffs must show that their confinement in prison falls within this "involuntary conditions" exception[5] recognized in *Church,* thus allowing a conclusion that Plaintiffs "cannot avoid future exposure to the challenged course of [Defendants'] conduct." *Id.*

With respect to Plaintiffs' argument that the alleged constitutional violations in this case reflect a policy or custom condoned by State prison officials, Plaintiffs cannot simply show that a policy or custom exposed Plaintiffs to the possible use of excessive force by Tactical Squad officers. *Church,* 30 F.3d at 1339. Rather, Plaintiffs must show that Defendants Garner and Thomas instituted a policy or custom that *authorized* Tactical

Force officers to use excessive force *without provocation or resistance from inmates. Id.*

The parties have not had an opportunity to brief fully whether Plaintiffs possess standing to seek the requested injunctive relief, so the Court cannot resolve the standing issue at this time. The Court is mindful of the *Griffin* and *Howard* courts' suggestion that certification of a proposed class is improper when the standing issue remains unresolved. Nonetheless, the Court also wishes to avoid further delays in the litigation proceedings. Moreover, the Court believes the circumstances influencing class certification will remain the same notwithstanding the resolution of the standing issue.[6]

The Court therefore believes the best course of action is to proceed with the disposal of Plaintiffs' Motion for Class Certification, and to order further briefing from the parties on the question whether Plaintiffs possess standing to seek the requested injunctive relief. The parties should endeavor to supplement the Court's discussion of case law with appropriate citations to legal authority and facts in the record to the extent such facts are available.

## V. Conclusion

ACCORDINGLY, the Court **GRANTS** Plaintiffs' Motion for Class Certification [13] and **ORDERS** that this action shall proceed as a class action under Federal Rule of Civil

---

4. A party must support arguments regarding standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Although the discovery period is not closed, the parties have conducted a significant amount of discovery during the past several months. The parties therefore should be able to support their arguments regarding Plaintiffs' standing with citations to facts in the record, and should not rely solely on allegations in the pleadings. *Id.* (standing arguments at summary judgment stage must be supported with evidence in the record).

5. The Court uses the term "exception" because other courts circuits have applied *Lyons* in a more constricted fashion. For example, in *Washington v. Vogel,* 156 F.R.D. 676 (M.D.Fla. 1994)—decided only months before *Church*—the

court found that a group of Hispanic plaintiffs lacked standing to challenge a municipality's alleged custom of targeting African-Americans and Hispanics for pretextual traffic stops. 156 F.R.D. at 679–683. After reaching this conclusion, the Court felt "compelled to agree that *Lyons* seemingly renders the federal courts impotent to order the cessation of a policy which may indeed be unconstitutional and may harm many persons. This is because most persons ... will be unable to show a real threat of future injury." *Id.* at 681 (internal quotation and citation omitted); *see also Williams v. City of Chicago,* 609 F.Supp. 1017, 1020 n. 7 (N.D.Ill.1985) (same).

6. Indeed, the sequence in which the class certification and standing issues are resolved makes little practical difference; if Plaintiffs lack standing, their request for injunctive relief will be dismissed regardless of the outcome of the Motion for Class Certification.

**1390**

Procedure 23(b)(2) on behalf of the following class:

All inmates housed in Georgia Department of Corrections facilities who will be subjected to future shakedowns led by Defendants Garner and/or Thomas, their successors, and their agents and assigns.

In addition, the Court **ORDERS** the parties to file within 20 days briefs exploring the question whether Plaintiffs possess standing to seek the requested injunctive relief. The parties thereafter will have 10 days to file briefs, limited to 10 pages, responding to the opposing parties' briefs.

Finally, the Court **ORDERS** Plaintiffs to file within 10 days a supplemental brief explaining how they will determine membership in the proposed class (*see* Part IV.A.1 of this Order, *supra*), and copies of counsel's resumes showing their qualifications and experience with class action litigation (*see* Part IV.A.4. of this Order, *supra*).